**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona, et al., | No. CV-17-00476-TUC-RCC |
| Plaintiff, | **ORDER** |
| v. | |
| Smith's Food & Drug Centers Incorporated, | |
| Defendant. | |

Pending before the Court is Defendant Smith's Food and Drug Centers, Inc. d/b/a Fry's Food Stores motion for summary judgment. Doc. 88 For the following reasons, this Court shall grant the motion as to the retaliation claims for both the State of Arizona and Sarah Cook. The Court will also grant Defendant's motion for summary judgment as to Cook's 100% healed policy claim but deny the motion for Arizona's 100% healed policy claim. Lastly, the Court will deny Defendant's motion as to Cook's and Arizona's disability discrimination claims.

**Standard of Review**

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A material fact is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, In*c., 477 U.S. 242, 248 (1986). A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The facts are "viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Scott v. Harris*, 550

U.S. 372, 380 (2007).

**Background**

Fry's is a grocery chain that has locations throughout Arizona. Doc. 89 ¶ 1. Plaintiff Sarah A. Cook began her employment with Fry's in November 1997. Doc. 91 ¶ 1. She worked as a pharmacy technician from 1999 until she was terminated in April 2016. *Id.* at ¶¶ 1, 18, and 129. A pharmacy technician performs duties at three stations: a product-dispensing station, a release-to-patient station, and a data entry/drop-off station. Doc. 89 ¶¶ 7-29. During a shift, the pharmacy technician rotates through these three stations. *Id.* Defendant claims that each station requires a significant amount of standing and walking. *Id.* The job description lists physical demands separately from general duties. Doc. 93 Ex.13.

In February 2015, Cook fell and injured her left knee. Doc. 91 ¶ 2. Cook sought treatment from her primary care physician and orthopedic specialists. *Id.* at ¶ 3-4. Cook was ultimately diagnosed with degenerative osteoarthritis, patellar degeneration, and internal derangement of the left knee. *Id.* at ¶ 16. The conditions limited her ability to stand for long periods of time, walk long distances, kneel, and squat. *Id.* at ¶ 17.

In March 2015, Cook received a medical leave of absence due to her knee injury. Doc. 89 ¶ 30. In April 2015, Cook submitted a Progress Report of Disability completed by Dr. Noonan. Doc. 91 ¶ 20. Dr. Noonan diagnosed Cook with "internal derangement of the left knee, osteoarthritis left knee, knee impairment." *Id.* In May 2015, Cook informed Fry's that she could return to work on June 1, 2015 with the accommodations of allowing her to use a cane, having a stool to sit on and limiting standing and walking to fifteen minutes per hour. *Id.* at ¶ 22. Fry's denied Cook's requested accommodation, in part because Fry's was concerned that the stool would be a trip hazard, and extended her unpaid leave. *Id.* at ¶ 37. In August 2015, Cook's union representative sent Fry's representatives photos of stools in Fry's pharmacies. *Id.* at ¶ 87. Fry's still denied the accommodation. *Id.* at ¶ 93.

In September 2015, Cook filed a charge of discrimination with the Arizona Civil Rights Division ("ACRD"). Doc. 91 ¶ 105. In November 2015, the parties met at the ACRD

office for mediation. *Id.* at ¶ 107. Cook claims that this was the first time that Fry's offered other positions but Fry's disputes this. *Id.* at ¶ 109. The parties did not reach a resolution.

In January 2016, Cook modified her restrictions to the availability of a stool, use of her cane and limiting standing and walking to fifteen minutes on and fifteen minutes off per hour for a total of thirty minutes off her feet per hour. *Id.* at ¶114. Fry's concluded that it could not reasonably accommodate Cook's restrictions as a pharmacy technician after discussing Cook's injuries with Dr. Noonan.

On April 14, 2016, Fry's terminated Cook's employment. Fry's informed Cook of its decision and invited her to apply to other positions. The State of Arizona then filed this action in Pima County Superior Court alleging failure to accommodate and discrimination under state law. Doc. 1. Cook then filed a complaint in intervention alleging discrimination and retaliation claims under the Americans with Disabilities Act ("ADA"). Doc. 8. The case was removed to this Court. Doc. 1. Defendant then filed this motion for summary judgment. Doc. 88.

**Discussion**

**I.  Discrimination claim**

To establish a prima facie claim for disability discrimination claim under the ADA and Arizona Civil Rights Act ("ACRA"), a plaintiff must "prove that [s]he is a qualified individual with a disability who suffered an adverse employment action because of [her] disability. *Sanders v. Arneson Products, Inc.*, 91 F.3d 1351, 1353 (9th Cir. 1996). [1]

**A. "Disability" under the ADA**

The ADA defines a disability as: (a) a physical impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such impairment; or (c) being regarded as having such an impairment. 42 USC § 12102(2*); see also Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003). Whether a person is disabled is an individualized inquiry. 342 F.3d at 1039.

---

[1]  ACRA is modeled after the ADA, thus, this Court will combine the analysis of the statutes. See *Fallar v. Compuware Corp.*, 202 F. Supp. 2d 1067, 1081 (D. Ariz. 2002).

### 1. Physical impairment

Cook alleges that she has several knee conditions and these conditions constitute an impairment under the ADA. A "physical impairment" is "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal." 29 C.F.R. § 1630.2(h)(1).

Cook has presented sufficient medical evidence that her knee condition is a physical impairment for ADA purposes. Defendant argues that Cook's impairment is morbid obesity but Cook twice informed Defendant that she had an impairment related to her knee. Because Cook has provided medical evidence regarding her knee injury, she has presented sufficient evidence establishing that her knee condition is a physical impairment.

### 2. Substantial limitation of a major life activity

Once it is established that a plaintiff has a physical impairment, the plaintiff must then show that the impairment substantially limited a major life activity. *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 858 (9th Cir. 2009). Major life activities include, "but are not limited to . . . walking, standing, lifting, bending . . . and working." 42 USC § 12102(2)(A). An "impairment need not prevent or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1); *see also Weaving v. City of Hillsboro*, 763 F.3d 1106 (9th Cir. 2014).

Defendant claims that Cook is not disabled for ADA purposes because she did not suffer a substantial limitation of a major life activity. Specifically, Defendant notes that Cook stated that her impairment limited her ability to stand for long periods of time and walk long distances. Defendant believes that "standing for 'long periods of time' and walking 'long distances'" are not major life activities under 42 U.S.C. § 12102(2)(A) because the statute only states "standing and walking are major life activities." Doc. 88 at 10.

In response, Cook argues that being unable to stand for more than fifteen minutes should be considered a substantial limitation.

This Court holds that there is a dispute of material fact as to whether Cook has a substantial limitation of a major life activity. Defendants have argued for an interpretation of "substantially limits" that is too narrow. The 2008 Amendments to the ADA clarified that "substantially limits" is not meant to be a demanding standard. Furthermore, the impairment does not have to be "significantly or severely" restricting. Cook has provided ample medical records that could lead a reasonable jury to conclude that Cook indeed had a physical impairment that satisfies the requirements of being disabled under the ADA. Thus, the Court shall deny Defendant's motion for summary judgment on the issue of disability.

**B. Qualified to perform the essential functions of the job**

Once a plaintiff survives the disability inquiry, the next step is to determine whether she is a qualified individual for ADA purposes. The ADA defines a "qualified individual" as one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and . . . a written description . . . for the job . . . shall be considered evidence of the essential functions." *Id.* "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). "'Essential functions' are not to be confused with 'qualification standards,' which an employer may establish for a certain position." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007). Whereas "essential functions" are basic "duties," 29 C.F.R. § 1630.2(n)(1), "qualification standards" are "personal and professional attributes" that may include "physical, medical [and] safety" requirements. *Id.* The difference is crucial. *Id.*

**1. Essential Functions**

Relying on the job description, Defendant claims that Cook is not a qualified individual because standing and walking constantly are essential functions of the job. Defendant argues that Cook's requested accommodation of sitting for at least thirty

minutes per hour prevent her from performing some of the essential functions of the job, and thus, she is not a qualified employee.

Cook and Arizona, on the other hand, contend that standing and walking are not essential functions but qualification standards. Pointing to the job description, the parties argue that the essential functions of a pharmacy technician include the tasks listed under the "Job Function" and "Duties and Responsibilities" sections. Doc. 93 Ex. 13. However, "Physical Demands" of the job description are in a separate section. *Id.* Furthermore, Cook also notes that there were stools present in Fry's pharmacies, and therefore, standing and walking could not be essential functions of the position.

This Court holds that there is a disputed question of material fact as to whether constant standing and walking are essential functions of the pharmacy technician position. A fact finder could reasonably conclude that standing and walking are not essential functions of the job either because they are qualification standards or because there is evidence that some of Defendant's pharmacies contained stools. Thus, this Court shall deny Defendant's motion on this element.

**2. Reasonable accommodations**

Once Cook has survived the qualified individual analysis, she now "has the burden of showing the existence of a reasonable accommodation that would have enabled [her] to perform the essential functions" of the pharmacy technician position. *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006). To avoid summary judgment, Cook "'need only' show that an accommodation *seems reasonable on its face*, i.e., ordinarily or in the run of cases." *Id.* (emphasis in original).

As previously discussed, Defendant argues that Cook's requested accommodation was not reasonable because standing and walking are essential functions of the job. Cook argues that her requested accommodation was reasonable because there is evidence that there were stools in Defendant's pharmacies.

Similar to the essential functions analysis, this Court shall deny Defendant's motion on this element. A fact finder could conclude that Cook's requested accommodation was

reasonable because some of Defendant's pharmacies have stools or because standing and walking are not essential elements of the position.

## C. Discrimination because of the disability

Defendant claims that it did not discriminate against Cook because of her alleged disabilities because she could not perform "the essential elements of her job with or without an accommodation." Doc. 88 at 12. However, as previously discussed, a reasonable jury could find that standing and walking are not essential functions of the position and that Cook's request was reasonable. Therefore, Defendant's motion for summary judgment is denied as to this element.

## D. Interactive process

"The Ninth Circuit has held that notifying an employer of a need for an accommodation triggers a duty to engage in an 'interactive process' through which the employer and employee can come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodating the employee." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1094 (9th Cir. 2018). The interactive process requires "communication and good-faith exploration of possible accommodations between employers and individual employees." *Barnett v. U.S. Air, Inc*., 228 F.3d 1105, 1114 (9th Cir. 2000), *vacated other grounds sub nom. U.S. Airways, Inc. v. Barnett*, 535 U.S. 391(2002). If an employer fails to engage in good faith in the interactive process, the burden at the summary judgment phase shifts to the employer to prove the unavailability of a reasonable accommodation. *Bates*, 511 F.3d at 1094.

Defendant claims it engaged in the interactive process with good faith because it had multiple conversations with Cook or her union representatives, requested information about her medical restrictions, asked Cook about her requested accommodations and discussed other available positions.

Cook and Arizona argue that Defendant did not engage in the interactive process with good faith because the HR Coordinator only spoke with Cook once, the Labor Relations Specialist did not speak with Cook at all, and Defendant never held an in-person

meeting with either Cook or her union representatives. Cook also contends that Defendant did not offer other positions until mediation and two of the positions were already filled by long-term employees and the third would have required Cook to spend more time on her feet.

There are genuine disputes of material fact related to Defendant's actions during the interactive process and whether it engaged in the process with good faith. Therefore, summary judgment is inappropriate. Defendant believes that good faith occurs by communicating on several occasions with Cook, her doctors and union representatives via oral and written communication. Arizona and Cook, on the other hand, claim that good faith requires in person meetings and Defendant did not offer positions that Cook could actually perform. A reasonable jury could conclude that Defendant made good faith attempts to accommodate Cook during the interactive process by speaking with Cook, her union representatives, and her doctors. A jury could also reasonably conclude that Defendant failed to properly engage in the interactive process by only offering positions that were either already filled or did not actually accommodate Cook's disability. Additionally, as previously discussed, Defendant cannot prove that no reasonable accommodations were available at this stage because there were stools present in its pharmacies. Thus, this Court shall deny Defendant's motion as to this element and the discrimination claims.

## II. Retaliation claims

To establish a retaliation claim, Cook must show: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal link between the two. *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003). If Cook establishes a prima facie case, the burden then shifts to Fry's to offer a legitimate reason for the adverse action. *Id.* at 1187-88. The parties do not dispute whether Cook engaged in a protected activity or if she suffered an adverse action. The parties only dispute whether there is a causal link between Cook's protected activity and her adverse employment action.

Cook relies solely on the temporal proximity between her protected activity and

termination. She argues that Fry's retaliated against her for filing a discrimination charge in September 2015 by terminating her employment in April 2016 after the mediation in November 2015 failed. Defendants respond that at least six months elapsed between the protected activity and termination, and thus, there is no causation link.

This Court agrees with Defendant. When relying on temporal proximity alone, this Circuit requires the temporal proximity to be "very close." 336 F.3d at 1187. For example, in *Brown*, the employee presented evidence that the employer began retaliating against the employee the very day that she engaged in protected activity. *Id.* Here, simply too much time has elapsed between the protected activity and the termination to support a temporal proximity argument for the causation element. Thus, this Court shall grant Defendant's motion for summary judgment as to the retaliation claims.

**III.    100% healed policy**

Arizona alleges that Defendant discriminated against Cook in violation of A.R.S. § 41-1463(F)(2) by maintaining a policy and practice of requiring employees returning to work from medical leaves of absence to be released without restrictions. Arizona claims that this constitutes a 100% healed policy and such policies are *per se* violations of the ADA under *McGregor v. Nat'l R.R. Passenger Corp.*, 187 F.3d 1113, 1115 (9th Cir. 1999). Defendant seeks summary judgment on this claim against Arizona and notes that Cook, who makes arguments about this claim in her response, did not plead a policy or practice claim.

In *McGregor*, an employer told McGregor that she could not return to work until she was "100% healed." 187 F.3d at 1116. The Ninth Circuit held that such policies were a *per se* violation of the ADA because the policy "discriminates against qualified individuals with disabilities because "such a policy permits employers to substitute a determination of whether a qualified individual is '100% healed' from their injury for the required individual assessment whether the qualified individual is able to perform the essential function of his or her job either with or without accommodation." *Id.*

Here, Arizona argues that Cook's store manager told her that she needed a complete

medical release before she could return to work and he testified that such a policy exists. Doc. 91 ¶¶ 21 and 134. Defendant claims that no such policy exists and Cook admitted that she knew Defendant accommodated employees with disabilities.

Summary judgment is inappropriate here because the parties have a genuine dispute regarding a material fact. Specifically, whether a 100% healed policy exists. However, to the extent that Cook now seeks to plead a practice or policy claim in her response to Defendant's motion for summary judgment even though she failed to do so in her amended complaint, the Court shall grant Defendant's motion for summary judgment as to Cook but deny the motion for summary judgment as to Arizona on this claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Smith's Food and Drug Centers, Inc. d/b/a Fry's Food Stores Motion for Summary Judgment is denied in part and granted in part. Doc. 88. The motion is granted as to the retaliation claims for both the State of Arizona and Sarah Cook. The motion is also granted as to Cook's 100% healed policy claim. However, this Court shall deny the motion for Arizona's 100% healed policy claim and as to Cook's and Arizona's disability discrimination claims.

Dated this 1st day of March, 2019.

_____
Honorable Raner C. Collins
United States District Judge